# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) |
| | ) No. 18 CV 4780 |
| v. | ) |
| | ) Judge Ronald A. Guzmán |
| DANIEL MONTEZ, | ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is Daniel Montez's pro se petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, which is denied for the reasons set forth below.

## BACKGROUND

In 2011 and 2012, federal agents conducted an investigation of a drug-trafficking ring led by Jose de Jesus Ramirez-Padilla, also known as "Gallo." The investigation involved wiretaps on the phones of Gallo and others connected with the ring. As a result of the investigation, Daniel Montez was indicted on three counts of possessing cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). (Case No. 12 CR 755-8.) The three counts corresponded to three distinct alleged drug transactions on October 27, 2011; December 12, 2011; and June 17, 2012.

At Montez's four-day trial, his strategy was "to cast himself as a user of the drugs, rather than a distributor." *United States v. Montez*, 858 F.3d 1085, 1088 (7th Cir. 2017). The jury convicted him of the December 2011 count but acquitted him of the other two counts. On January 5, 2016, the Court sentenced him to a term of 210 months' imprisonment. Montez appealed, and the Seventh Circuit affirmed the conviction and sentence.[1]

---

[1] At trial and on appeal, Montez was represented by counsel.

Montez now moves for post-conviction relief, raising three claims of ineffective assistance of counsel and a claim in which he challenges the application of the career-offender sentencing enhancement.

## DISCUSSION

Section 2255 allows a defendant to move to vacate, set aside, or correct a sentence that was imposed in violation of the Constitution or laws of the United States, was imposed by a court that lacked jurisdiction, was greater than the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Relief under § 2255 "is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013); *see also Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (§ 2255 relief "is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process").

### A.     Ground One

In Ground One, Montez contends that the application of the career-offender enhancement at sentencing violated his Sixth Amendment rights. Montez has an extensive criminal history. Based on a 1984 murder conviction and a 2007 conviction for aggravated battery of a police officer, the probation officer who prepared Montez's Presentence Investigation Report ("PSR") concluded that he was a career offender. (Case No. 12 CR 755, ECF No. 888, PSR, at 9.) In September 2014, defense counsel filed objections to the PSR. (Case No. 12 CR 755, ECF No. 938.) Defendant did not challenge the probation officer's determination that the career-offender enhancement was applicable, nor did he challenge the inclusion of the aggravated-battery conviction in his criminal

history (as he did with certain other convictions that were listed in the PSR). Defendant merely argued that because the Court was empowered to deviate from the Sentencing Guidelines, it should not sentence him as a career offender.

Prior to sentencing, Montez sought to discharge his counsel and represent himself, and the Court granted the motion. Montez represented himself at sentencing, with standby counsel present. At sentencing, Montez objected to the career-offender enhancement on the sole ground that his civil rights had been restored with respect to one of the convictions, so that conviction could not be used to support the enhancement. He did not raise any other objection to the enhancement, nor did he take issue with the PSR's description of the factual circumstances of the 2007 aggravated-battery offense. (Case No. 12 CR 755, ECF No. 1271, Sentencing Tr.) The Court overruled defendant's objection and agreed with the government that the Court's considering the conviction for purposes of applying the career-offender enhancement was proper and not precluded by any restoration of civil rights.

On appeal, Montez argued that this Court erred by considering the aggravated-battery conviction as a qualifying "crime of violence" for the career-offender enhancement, because the government had produced no document that would satisfy *Shepard v. United States*, 544 U.S. 13 (2005), to show that Montez was convicted for causing someone bodily harm. The Court of Appeals rejected this argument, reasoning that the government's failure to rely on *Shepard* documents is not error where the defendant did not question the accuracy of the conviction's underlying facts as summarized in the PSR. *Montez*, 858 F.3d at 1092 (noting that Montez "did not contest the facts contained in the presentence report, which said that the aggravated battery charge was based upon his kicking a police officer in the chest several times and in the face once").

3

Montez now argues that the Court of Appeals' determination that he did not contest the facts contained in the PSR was based on an "erroneous view of the record," and that this Court may correct that error in this proceeding. (ECF No. 3, Def.'s Mem. at 6.) According to Montez, there is good cause for reexamining the issue, because he "contested the factual circumstances" of the aggravated-battery case "as reported in the PSR," and this Court should have resolved these "conflicting accounts" in accordance with Federal Rule of Criminal Procedure 32(i)(3)(B).[2] (*Id.* at 2, 7.)

Ground One rests on a faulty premise and is therefore not a basis for relief. The PSR does not, in fact, reflect that Montez disputed the facts underlying his aggravated-battery conviction. Rather, it indicates that Montez provided the probation officer with additional facts about the incident. He complained to the probation officer that the police officer who was involved in the incident was "known to harass people." (PSR at 15.) The probation officer also stated: "The defendant said that the arresting officer claimed the defendant had repeatedly kicked him; however, the defendant suffered 'serious injuries' during the traffic stop." (*Id.*) Nowhere does the PSR indicate that Montez disputed that he had kicked the officer in the chest and face, nor did Montez so dispute at any phase of sentencing, whether represented by counsel or pro se. The Seventh Circuit was correct in determining that Montez did not dispute the facts contained in the PSR.

**B.      Grounds Two, Three, and Four**

Montez argues that he is entitled to relief under § 2255 because his defense attorneys

---

[2]  That Rule states that the Court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing."

rendered ineffective assistance, in three ways. Ineffective-assistance claims are analyzed under the two-part *Strickland* test. *United States v. Lindsay*, 157 F.3d 532, 534 (7th Cir. 1998) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). Under *Strickland*, Montez must show (1) deficient performance, *i.e.*, that counsel's representation fell below an objective standard of reasonableness, and (2) that as a result defendant was prejudiced, in that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *See United States v. Jansen*, 884 F.3d 649, 655-56 (7th Cir. 2018). "Because counsel is presumed effective, a party bears a heavy burden in making a winning claim based on ineffective assistance of counsel." *Shell v. United States*, 448 F.3d 951, 955 (7th Cir. 2006) (internal punctuation and citation omitted). A petitioner must identify specific acts or omissions that are alleged to have fallen below professional norms. *Strickland*, 466 U.S. at 690. If one prong of the *Strickland* test is not satisfied, it is unnecessary to reach the other prong. *Id.* at 697.

In Ground Two, Montez asserts that appellate counsel was ineffective for failing to raise on appeal the issue Montez raises in Ground One—that the Court erred by applying the career-offender enhancement because it did not resolve the "factual dispute" regarding the 2007 aggravated-battery conviction. Ground Two fails for the same reason as Ground One. As discussed above, defendant did not dispute the facts underlying the conviction. Therefore, it would not have been reasonable for counsel to so argue to the Court of Appeals.

In Ground Three, Montez argues that trial counsel was ineffective for failing to request a jury instruction on simple possession as a lesser-included offense of possession with intent to distribute. "To be entitled to an instruction regarding a lesser-included offense, a defendant must establish that (1) the offense on which he seeks an instruction is a lesser-included offense of the one charged, and

5

(2) a rational jury could find him guilty of the lesser offense but not guilty of the greater offense." *United States v. McCullough*, 348 F.3d 620, 624 (7th Cir. 2003). Montez is correct that simple possession is a lesser-included offense of possession with intent to distribute, but to receive the lesser-included instruction, he would have needed to produce evidence at trial sufficient to satisfy the second prong of the inquiry. *See United States v. Puckett*, 405 F.3d 589, 600 (7th Cir. 2005). In *Puckett*, the defendant asserted that the trial court erred by failing to give a lesser-included-offense instruction for simple possession. The Court of Appeals rejected defendant's argument, explaining as follows:

> Puckett offers only his self-serving assertion that the drugs were intended for personal use only. Indeed, Puckett failed to present any direct evidence whatsoever at trial that he was a cocaine user or possessed the drug because he had any intention of consuming it himself, and also failed to offer any explanation as to how such a large amount of cocaine (63 grams) could rationally be considered consistent with personal use. Instead, Puckett's defense to the government's charge that he possessed the drugs solely for distribution was based upon negative inferences only. He argues that because no trappings of the drug trade—such as cutting agents, beepers, cell phones, or scales—were found on his person at the time of his arrest or during a later search of his grandmother's residence, and because the officers who arrested him also found him in possession of a "user quantity" of marijuana (.7 grams), the jury could have rationally inferred that he possessed the drugs solely for personal use. These circumstantial details of his arrest fall far short of constituting convincing evidence supporting Puckett's claim of simple possession, and fail to create a question for the jury on the issue of whether he possessed such a large quantity of drugs strictly for personal use. The absence of any drug dealer's paraphernalia is inconclusive of personal use. It may be that Puckett had a separate venue which he used to process the cocaine for distribution or that he was a mid-level drug runner, either scenario is irrelevant for each would constitute possession with intent to deliver. . . . Conversely, the government introduced overwhelming evidence establishing that the quantity of drugs Puckett possessed could only be intended for distribution.

*Id.* at 600-01 (citation and footnote omitted).

This case is on point with *Puckett*. Montez's tack at trial was to suggest that he had purchased cocaine strictly for personal use. He did so solely by eliciting testimony from FBI agents

6

that no drugs were found on his person or at his house when he was arrested and his house was searched in September 2012 or during previous encounters with law enforcement, nor did the agents find at his house trappings of the drug trade, large sums of money, "fancy" cars, or jewelry. But that was the extent of Montez's defense. Like Puckett, he did not present any direct evidence at trial that he possessed the drug because he had any intention of consuming it himself. Furthermore, the government presented substantial evidence that the quantities Montez purchased were not for personal use. The government's evidence included wiretap conversations in which Montez (1) told Gallo's brother Helein (a codefendant who assisted Gallo in the drug operation) that he wanted "one, two, three, maybe three sevens," and that he need[ed] to know whether the cocaine was "hard or . . . loose," because "these . . . dudes [i.e., his customers] are picky"; (2) told Helein he needed "three" and was "going to get one for [himself] in the meantime"; and (3) complained about "this other one you gave me," stating that it was "all loose" and that "they don't want them like that." (Case No. 12 CR 755, ECF No. 1336, Trial Tr. at 349-50, 354.) Furthermore, the government introduced testimony from an expert witness who explained drug-trafficking methods and the meaning of drug code words, such as "seven" for seven grams, and who stated that seventy individual dosage units could be produced from a seven-gram quantity of cocaine and that it was more likely a distribution amount than one for individual consumption. The government also called Gallo, who testified that Montez was his customer and had purchased seven-gram quantities of cocaine. As in *Puckett*, there was no evidence in the record to support Montez's theory that the quantities of cocaine he had purchased were for personal use. Thus, there was no basis for instructing the jury on a lesser-included offense, and trial counsel was not ineffective for failing to seek such an instruction.

In Ground Four, Montez asserts that because English-language transcripts of wiretap

7

conversations conducted in Spanish were introduced at trial, trial counsel was ineffective for failing to request a jury instruction stating that the recordings themselves were the primary evidence, the transcripts were to assist the jury in evaluating the primary evidence, and if the jury determined that the transcripts strayed from the recordings, they should disregard the transcripts. This ground is without merit. Montez relies on *United States v. Cruz-Rea*, 626 F.3d 929 (7th Cir. 2010), which, as the government points out, is distinguishable. In *Cruz-Rea*, the recorded conversations at issue were played for the jury, *id.* at 936, so an instruction that they were the primary evidence was appropriate. At Montez's trial, however, no recordings were played for the jury; instead, they were admitted pursuant to the parties' stipulation, and the transcripts were read to the jury. Given that the recordings were not played for the jury, Montez's proposed instruction would not have been appropriate, and counsel was not ineffective for failing to request it.

Under Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability when it enters a final order adverse to the petitioner. The Court declines to issue a certificate of appealability. A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Under this standard, a petitioner must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014) (citation and internal quotation marks omitted). Montez's claims do not meet this standard.

## CONCLUSION

Daniel Montez's petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C.

§ 2255 [1] is denied. The Court declines to issue a certificate of appealability. Civil case terminated.

DATE: April 18, 2019

_Ronald A. Guzmán_
**Ronald A. Guzmán**
**United States District Judge**